RJM Acquisitions Thank you, Ellen. Thank you. Good morning. May it please the court, David Minkin and Elizabeth Robinson on behalf of Appellant RJM Acquisitions LLC. Thank you. We appreciate the opportunity to be last and hopefully not least on the calendar. Basically from having listened this morning to most of the other cases, this is a very fact, limited fact case because we have a total of four letters that comprise all of the evidence that's before this court. We have two letters that were sent on May 20th, 2002 from my client, RJM, to Mr. Guerrero to two different addresses that were provided by the original creditor at the city court. One to a post office box and another to a street address. The post office box letter was further identified with the letter A. The street address was further identified with the letter B because this account was last, the last payment was in 1998, four years earlier and there was no indication or no knowledge as to which address, if either, was still valid. Based upon those letters going out to Mr. Guerrero, Mr. Guerrero then contacts his attorney, Mr. Pair, who sends a letter dated June 10th, 2002, basically indicating that the letters that were sent contained conflicting and confusing information, requested a verification request of the debt, not of the debts, or not indicating that somehow the A or the B were confusing. In response to that letter to my clients, my clients send a letter directly to Mr. Pair with additional information about the account, statements to Mr. Pair as the lawyer for Mr. Guerrero and other language on the letter that the trial court felt was important to the trial court, such as postage paid, return envelope, this is an attempt to collect the debt and any information will thereafter seek to enforce that debt. So the letter to the lawyer was an attempt to collect the debt? We do not believe that it was. I believe... Even though it says this is an attempt to collect the debt, there's a document in there that says obviously to send the debt back, the payment back. There is a document in there indicating that this is the amount that's outstanding, there is a postage paid envelope and it's responding to the lawyer and the language at the bottom commonly referred to as the mini Miranda that was required at least in Hawaii up until approximately a year before under the Hawaii statute. I don't believe that even if that language is there that one can interpret it as an attempt to collect the debt when it's in response to a letter from the lawyer and when the lawyer is now not the consumer and the consumer is defined within the statute. Do you have any cases on that? It seems to make sense to me that at some point the Debt Collection Act is designed to prevent debt collectors from harassing consumers. So the consumer says, you owe me this, you owe us this money, we're going to collect this debt. He goes to his lawyer and then the lawyer sends you a letter and at that point, hasn't it become something different than debt collections and now we're negotiating between a lawyer and... Is there any case on that? I believe that we have cited a case. Give me just a second. We relied on the fact that we have a case on that. Borek v. Phillips and Cohen Association, 330 Fed Sub 2nd, 962. I know there's some district court cases on that. No Ninth Circuit case. They're correct. We have not been able to find it even in a review up to date. There does not appear to be any, either Ninth Circuit or any other circuit decision on this issue. But I think it's significant that when the... We have to go back and look at what the intent was of the statute. The intent of the statute as mandated by Congress was to put unscrupulous debt collectors at bay from taking advantage of, in this case and in all cases, the least sophisticated consumer. What we have here is communication with the counsel for the client reacting to a letter that was sent saying everything is to go through me as the counsel and I don't believe that Congress or any of the case law has ever indicated or mandated or held that that type of communication, debt collector to an attorney, somehow impacts or violates the fair debt collection practices. Actually, there is a Second Circuit case, Krapunov v. Siegel, 290 up there at 118. It says that when the attorney steps in as the intermediary, the Fair Debt Collection Practices Act doesn't apply. I don't know if you cited it or we found it. It does not sound familiar to me and I apologize for not having found it, Your Honor. So what we have then is a situation where the trial court finds that the letter to Mr. Siegel, the June 14th letter in response to the June 10th letter from Pehr, correct, that now this letter forms the basis of two of the reasons why the court granted summary judgment in favor of the plaintiff and against my client. Basically, that it was that we continued to collect on the debt and also that there was a misstatement where my client says to the attorney that we are not bound or guided by the provisions of the Fair Debt Collection Practices Act, even though that later on there was an admission that we are bound by that. If every piece of correspondence back and forth between attorneys implicated sanctions or draconian reactions, we as attorneys, we as advocates or even clients who don't have the use or at that point don't utilize counsel, go back and forth to attorneys in response to basically what I'll characterize as an extortion attempt. Letters go, demand is made, pay us $3,000 within 10 days or you'll find yourself in federal court for violating the Fair Debt Collection Practices Act without doing anything more than saying that it's a statute. The intent and purpose of the statute was to protect consumers. We have a situation here where we have Mr. Guerrero who immediately gets the letters, the May 20th letters, and is not, and I would submit is not confused in the slightest. He goes to his lawyer, a lawyer who he's been utilizing in other fair debt cases as we cited in our legal fight in the system. He is utilizing Mr. Pair on more than one occasion in an attempt to avoid valid debts. He never denies that he owes the money. Let's talk about the issue dealing that Judge Gilmour found with the June 14th letter. I want to go back to the original letters and I would argue and submit that we briefed it that there is nothing confusing or misleading about the addition of the letter A or the addition of the letter B because even when Mr. Pair writes his letter of June 10th, he does not question whether it is a multiple debt. He refers to a single debt owed by his client and that's telling. When that request for verification goes, then what's required on the other side? Two things are required. Either of two options are required. Either verification is provided or a cessation of the collection of the debt. There was no verification yet provided on June 14th. I believe that there was. If you look at the letter. It says we are in the process of complying. Correct. We'll be sent to you on receipt. There's been no verification. I would agree with you that language is in there, but I would also argue that if you look at what's also contained as additional information is contained in that letter, that information has been held to be consistent with the type of verification that is adequate under the fair debt. That information basically told you and gave you additional information beyond which was in the original mail letters such as a Shell Oil account was opened on August 12th, 1993 in the name of Kenneth J. Guerrero with a specific social security number and telling you that the last payment was posted on October 2nd, 1998. What is a verification? I'm not familiar with this term in this context. What does a verification usually consist of? The verification usually consists of the original creditor saying that this is an account that we had. The original creditor. Correct. Okay, so there's no statement here from an original creditor. The original creditor, though, it's listed up above Shell Oil. Listed, but there's no statement from the original creditor. As of this... So this falls short of a verification, and that's why they say we're still working on it. So if there's no verification then provided, then there has to be a cessation. Correct. And then I guess the question is whether there was a cessation, and this letter says this is an attempt to collect the debt. Here's an envelope. We're not subject to the Fair Debt Collection Practices Act, and communication is described as between anybody, not just the debtor, but it says any person. I believe if we look at the definition of the term... So you have to cease communications to collect the debt that go to any person. The term communication means the conveying of information regarding a debt directly or indirectly to any person through any medium. So it's possible to continue to collect through the lawyer. It's one thing to talk to a lawyer about what you can talk to a lawyer about. Isn't it another to continue to attempt to collect through the lawyer? I think that is what the underlying court, and it sounds like Your Honor is agreeing to, I don't believe that the letter on its face, notwithstanding that language, is an attempt to collect the debt. So we just ignore this as an attempt to collect the debt? We ignore that? I believe that my client was being overly cautious putting that language there. Without having dealt with Mr. Pair before, without having dealt with... Any information obtained will be used for that purpose. I mean, it appears to me to be a continuing attempt to collect the debt. I would wholeheartedly disagree. I think that language is surplusage. It was not necessary. It was put on there. It basically comported with what was required under the law previously as well as what was required in Hawaii. And I don't believe that... So are you saying at least there's a genuine issue of material fact as to whether this letter was an attempt to collect the debt? I think at the very least, if this court is inclined to say that or hold that this particular language gives it cause for concern, there is a genuine issue of material fact as to whether this was an attempt to collect... What does it mean when Otis McGovern says, we're not subject to the Fair Debt Collection Practices Act? That is a statement that's basically going to the attorney who sent them a letter on June 10th saying... Is it right? Is it correct? It was a position statement because they had bought the debt from the original... Yeah, but it's too cute by a half, isn't it? I mean, of course they're subject to the Fair Debt Collection Practices Act. I can't see any way they're not. But the question now comes back as to, that is a communication to the attorney. Yes, we don't have to pay any attention to the Fair Debt Collection Act. Send the money. It's basically saying that we're not bound by it and Mr. Payer gave them a 10-day drop-dead date to pay the $3,000 or find themselves in federal court if they didn't pay. But that's the part of it that really troubles me is that, and I hope counsel will respond to this, but this Mr. Payer's letter seems like a demand letter. He's actually saying, you pay us $3,000 or we're going to court because we found some problems with the two letters. This letter is being sent to the same post office that allegedly could mislead a least sophisticated debtor, but it's a demand letter. So at that point, you're threatened with litigation. Correct. Now, I think your next letter, there's two problems I see. One is the language, this is an attempt to collect the debt, because if I were responding to a demand letter, I would say, no way, he owes us this money, we're not paying you that money, he owes us X money. But maybe that's what you're saying, I don't know. But the other part that troubles me is that you say that you are not a collection agency and you're not subject to the Fair Debt Collection Practices Act. To me, that seems just not true. I don't see how you can say it's a legal position. But it's something that's going to the lawyer, it's not going to the consumer, it's not misleading the consumer, it's not doing anything to give the consumer a misapprehension as to what his rights are, his or her rights are under the statute. You're telling the consumer's agent, you're out of your mind. Did RJM communicate directly with the consumer after this point? Not at all. From the moment they received the letter dated June 10th, from Mr. Pair, this was the only response back, was the June 14th letter. There was no communication with the consumer. Okay, your time is up. I'll hand it to you on the other side. Good morning, Your Honor. John Pair for Mr. Guerrero. I want to respond, Judge Wardlaw, to your question, because there is a Ninth Circuit case on point regarding communications, and that's Fox, which we cited in our brief. In Fox, the defendant's attorney allegedly broke a promise to the plaintiff's attorney, that is, to Mr. Kaplan. Mr. Kaplan promised to contact Fox's lawyer prior to filing the garnishment. He then filed the garnishment without contacting Fox's lawyer. This was a false representation, as we have here, and it was lawyer-to-lawyer, and the court found that that could be a violation of the act. This court did. Time out. Where is this in your brief? I just want to note it then. You said Fox is in your brief? Yes. Which brief? It's on page 14. Doesn't that case just stand for the proposition that if the attorney is acting as the debt collector, he falls within the debt collection directive? It stands for that as well. Let me quote to you from the decision. Fox v. Citicorp. I'm sorry? I got it. Fox v. Citicorp. On page 1511 of that decision, this court said, and remember now, Aaron is Fox's attorney, Kaplan is Citicorp's attorney. This court said Fox's attorney, Terry Aaron, contacted Kaplan's office by telephone. I'm quoting now. By subsequent letter, Aaron confirmed his understanding that no further action would be taken without first contacting him. Kaplan faxed a copy of the letter back to Aaron with a handwritten note asking him to fax information about Fox's past payments to Kaplan's office. Then on page 1517, this court said, quote, Finally, Citicorp's lawyer filed the garnishment without a promised contact with the Fox's lawyer. Such contradictory and inaccurate communications could rationally support a jury finding that Citicorp used deceptive or misleading means in connection with the collection of the debt. So there you had lawyer-to-lawyer communications and this court found that that could be a misleading communication under the act. So I don't think there's really any issue on that. I'll have to look at that because I don't see that it's exactly on point. I'll look at it. I'm sorry? I said I'll have to look at it because I don't see it. Well, it's a communication from one lawyer to another lawyer and the court is finding that that can support a violation under 1692. I mean, he breached his promise on something else. I mean, he said he would contact him. That's what they're finding is the problem. Right. He made a mistake. He made a false statement. Right, he made a false statement, but it's not debt collection. Well, it's less than what we have here. He made a false statement in what he would do. Here we have a false statement in the collection of the debt from lawyer-to-lawyer. Our case is stronger. And the cases that you cited in Kropelniki, there's two cases out of the Second Circuit on that. They're both dicta. Kropelniki says what you said, that does not fall under the Act. Paulman out of the Second Circuit also is dicta, saying it is. Paulman in the Second Circuit said such a litigation exception could apply only to litigation, that is, if there was one. And I'm quoting here, that is the filing of a complaint and related submissions to the court. It cannot apply to the sending of letters to a debtor or the debtor's counsel prior to the actual filing of a complaint. So, Mr. Parrott, when you sent this June 14th letter, and I'm sorry, it's not the June 14th, it's the June 10th letter. Yes. You were threatening litigation, right? Yes. Okay. And how did you expect RJM to respond? To just say, okay, we'll send you $3,000 and drop the debt? No, I expected them to respond with verification of the debt if they had it, to tell us whether there was one or two accounts, because it was confusing. You were confused by that? Yes. I wasn't sure. How are you supposed to know? It has two account numbers, two file numbers. It's the same numbers, just A and B in two different addresses. If they're two different numbers, there can be two different accounts. The same number, just A and B. As the lower court found, slightly different numbers can indicate slightly different accounts. You don't know. It's certainly not beyond the realm of possibility that they could be referring to two accounts. And again, the test is not me. The test is whether that's confusing to the least sophisticated debtor. Well, actually, under Rule 11, the test would be you, as a lawyer, if you filed suit on that basis when you understood that there was only one. I beg to differ, Judge, because these letters go out to thousands and thousands and thousands of consumers. These guys bought millions of dollars worth of debt for pennies on the dollars, and they send these letters out routinely to thousands of consumers. The point is that if it's confusing to the consumer, whether or not it's confusing to the lawyer, it's a violation of the law. And the law is designed to protect the consumer, not to protect the consumer's lawyer. If it is, in fact, confusing to the consumer, that's a big problem, and that's exactly what this Act is supposed to protect against. And your contention, as to the confusing, is that because there are two different file numbers, one with an A and one with a B, it's confusing even though the amount of the debt remains the same, even though the person to whom the debt or the entity to whom the debt is the same, you say that's confusing? A lot of people have more than one credit card. For precisely the same amount? Precisely the same creditor? Precisely the same creditor is not a big deal. A lot of people have more than one credit card. I have a couple with American Express, for example, and a lot of people do. The same amount is an indication, but they don't send me, when I get my bill, I don't get it in two different account numbers, even with an A or a B. I have to be pretty sophisticated rather than unsophisticated before I'm confused by having two different letters. This law is designed for the least sophisticated debtor, but it wasn't just a different account number, it was their own file number also had the A and the B, you just don't know. Because your client had given them two addresses. I don't know where they got the addresses, but he had... Well, their city bank provided, along with the debt, the two addresses, right? Let me ask you a different question, and that is, if we were to hold your way with respect to the coverage of a communication to an attorney, that is to say, it doesn't matter whether the attempt to collect the debt was addressed to you or to your client. And if we were to hold that because verification was still underway and had not been completed, it was a violation of the act to attempt to collect a debt, do we need to reach the question whether they have an independent obligation to do verification? If they ceased collection attempts. No, you said the district judge wanted to say that, you know, whether or not you've ceased to collect, you have an independent obligation to provide verification. Do we need to reach that question? You don't. I think she was right. Obviously, I think she was right. You don't. I don't think you do need to reach that question. If they collected, well, they did collect, they did try to collect the debt. I mean, it said, they say you shouldn't hold us to our own language. They said it's an attempt to collect the debt. But if they collected the debt after we asked for verification, they admit they didn't provide it because they were still in the process of doing that, yes, then you would not have to reach that issue. I'd like to ask Judge Trott's question to you, and that is, why is not the information that they provide in their letter back to you a sufficient verification? I know that they've said we are in the process of providing, of trying to find verification, and we'll give it to you when we get it. But they've given you more information already than in the initial letter. Why isn't this amount of information that's given to you in their return letter, why is that not sufficient verification? Three reasons. The first is they didn't argue that issue in the opening brief, so the lower court ruling should stand. The amicus argued it, and they argued it in their reply brief, but they did not argue it in their opening brief, so it's not before the court. Secondly, at a minimum, verification requires that they confirm with the original creditor, at a very minimum, they confirm with the original creditor that the amount is owed and it's the right person. They hadn't done that. How do you know they haven't done that? Because they said we're in the process of talking to these guys. They said they just basically repeated what they had repeated in their demand, and they say you owe it, but they didn't say we've talked to you. No, they provided more information. Yes, but they didn't say the requirement is that at least that you have to check with the original creditor, and you have to take that step. Is your point that they didn't verify the debt? All they did was restate it? Right. Exactly. Exactly. They said what they said before, but they didn't do any verifying. They didn't call. At least they didn't show it. Is there any definitive explanation of what one must do to verify a debt? Where do we find that? Well, this court has recently held on that issue in Clark v. Capital Credit. It held what? It held that you do have Clark v. Capital Credit. I've got it here. Sorry. It's not cited in the briefs. It's a recent. It was just decided on August 24th this year. But in Head Note 15 of the decision, it says, Capital and Hassan's actions then satisfied the requirement that they confirm with their client the particular amount being claimed. So at a minimum, under this court's decision, they have to confirm with their client the amount being claimed. They hadn't done that. They were in the process of doing that when they made their additional demand. In Mann v. Credit Bureau of Placer County, we described one way to provide proper verification. Verified the nature and balance of the outstanding bill, learned the monthly statements had been sent to the debtors for over two years, and established the balance was still unpaid. Okay, that's one way to do it. Reasonable standard offer, and by the Fourth Circuit, that the minimum of verification involves nothing more than the debt collector confirming and writing that the amount being demanded is what the creditor is claiming is owed. I know there's a lot in here about, you know, I have to say this further, but it seems to me that RJM was following this statute because there's at least two sections that start talking about, and they're saying, you know, what is abusive and what is not abusive debt collection practices. And there's at least two sections that say if the debt collector knows the consumer is represented by an attorney, then that is with whom they're supposed to communicate. And that's exactly what they did here. And then I'm wondering, well, so if they follow what this law dictates them to do now, they're communicating with you, how can they be held to be engaged in abusive processes? That's not all they're required to do. They are required to communicate with me, but they're specifically prohibited under 1692 G.V. from attempting to collect the debt until they verify they didn't. Well, let me just read you this again. We adopt as a baseline the more reasonable standard articulated by the Fourth Circuit and Chaudhry. At a minimum, quote, verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed. All right, and that's from... So back to what Judge Fletcher said, why doesn't this collection letter that we're talking about comply with that? It's the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed. I'm sorry, what case are you reading from? I'm reading from Clark v. Capital Credit and Collection Services, file August 24, 2006. Okay, because they go on in footnote 15. The court says, Capital and Hassan's actions then satisfied the requirement that they confirm with their client the particular amount being claimed. And they didn't confirm it with their client. So again, we go back to the word verification, not just restate. Right. You can't just restate it. I mean, verification means you verify. Why isn't there a genuine issue of material fact to use the magic language as to whether this June 14 letter is an attempt to collect? The other side says that's just boilerplate that ends up on there automatically. Okay. It's not boilerplate. That's just not true. There's... 1692e11 says after the initial communication, you're supposed to put in that this communication is from a debt collector. You don't have to put in anymore that this is an attempt to collect a debt. They chose to do that. You don't have to do that. Well, they also chose to claim they're not a debt collector. They also chose to claim they're not a debt collector. And writing a letter to the attorney is not a license to lie. I mean, that's basically what they did. They figured there was some... You're not taking a legal position because you threatened to sue them. That's not true, Judge. Just a second. I just have a different question. There's a provision in the Act of 1692g that talks about disputed debts. Right. Now, you don't dispute the debt in your letter. You just threatened to sue. I don't think that's true. Okay. Well, where do you dispute it? I believe we asked for verification of the debt. That doesn't say. If the consumer notifies the debt collector in writing within a 30-day period that the debt or any portion thereof is disputed... In addition, Mr. Carrillo indicates formally that he disputes this alleged debt. Where is that? In the last paragraph, Judge. Last paragraph. All right. In addition. Exhibit C. Okay. So you did dispute the debt. And we asked for verification. And, again... But what would a reasonable person assume from this point on? Okay, so they respond. They say, here's what we know. We're going to get you the information to satisfy you that this is really the debt. Why does this become a feral case? Because the letter, for starters, they never did verify it. Never. When did you file a suit? They can verify after the suit. Excuse me, they what? The suit doesn't stop them from verifying the debt. You mean this debt has never been verified? No. No, it has never been verified. Does your client admit or deny that he owes the money? It never came up. It never came up? He had the account. He didn't know if the amounts were right, and he denied that he had two accounts with them. But as far as the actual amount on the single account, he didn't think it was that high. And it wasn't that high. They added interest, but the district court said that was okay. Yes. That was one thing the district court did not find an error. That's correct. We didn't agree with that, obviously. The district court said that was fine. But you're saying, did he owe the debt? He didn't feel that he did, and he didn't feel that he owed the interest. What do you mean he didn't feel? He didn't think he owed it. Judge Judy says, feel? He didn't think he owed that much interest. Oh. And he owed the debt. He owed some money. He owed some money, but he didn't owe the interest. Is this standard hardball tactics to send back a letter saying, send $3,000 and we'll go away? Sometimes, sometimes not. It depends. I felt that the letter was, that the two letters with the two account numbers and so on was confusing. With all due respect, this strikes me simply as an op-ed. It's confusing to make money for the client rather than help the client satisfy an obligation to pay some money that's owed. Well. That's the problem with these statutes, is they become clubs that people grab a hold of and start beating people to death with them. Well, that's really not true, Judge. This company buys millions of dollars of debt for pennies on the dollar, and they send out letters. Sometimes there's more than that. They send out letters that can be confusing. So why doesn't a lawyer say, hey, listen, we'll settle this thing with you for X. They did. Forget the interest. Instead of writing a letter saying you owe $3 million. It wasn't $3 million, it was $3,000. I mean, $3,000 is not exactly a huge demand. Plus attorney's fees. No, it included attorney's fees. That was everything. And if they had come back with an offer, the case would have been settled for less than that. It seems like an honest debtor getting this letter would just say, maybe go to an attorney and say, okay, if he really doesn't get that it's the same debt. You know, I think I owe this much, I don't think I owe that much. And then the attorney could write and say, okay, he says he owes this much, he doesn't owe that much. Will you tell us how you come to calculate this instead of immediately throwing down the gauntlet and threatening to go to feral court? Well, the statute is designed to make sure that the debt collectors don't overreach. They did overreach. They didn't do anything really abusive in this case. It doesn't need to be really. As defined in the act. As defined in the act. It doesn't have to be really abusive. They didn't follow the law.  We asked for verification. They promised, the law says you have to verify. Their notice says you have to verify. We asked for verification. They don't verify. That's abusive under the act. We did them before that got done. Anyway, I think we now are just repeating ourselves. Okay. So, this case, Guerrero v. RJM, will be submitted. Thank you, Judge. And this session of the court is adjourned for this day.
judges: Trott, Wardlaw W. Fletcher